UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RONALD JACOBS                                                      CIVIL ACTION

VERSUS                                                             NO. 14-552

CASEY McVEA                                                        SECTION "B"(3)

### REPORT AND RECOMMENDATION

Plaintiff, Ronald Jacobs, a state inmate, filed this *pro se* and *in forma pauperis* civil action against Dr. Casey McVea, the staff physician at the B.B. "Sixty" Rayburn Correctional Center. Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. In this case, plaintiff claims that he was denied adequate medical care in violation of the Eighth Amendment.

### I. Standards of Review

Federal law requires that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches

Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[1] the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

## II. Plaintiff's Claims

Before addressing the specifics of the underlying claims, the Court first notes that plaintiff is suing Dr. McVea in both his official and individual capacities. However, to the extent that plaintiff is seeking monetary damages against McVea in his official capacity, those claims clearly must be dismissed. McVea is a state employee working at the B.B. "Sixty" Rayburn Correctional Center, a prison operated by the Louisiana Department of Public Safety and Corrections. See, e.g., Demouchet v. Rayburn Correctional Center, Civ. Action No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008). A state employee sued in his official capacity for monetary damages simply

---

[1] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

is not considered a "person" subject to suit under 42 U.S.C. § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Stotter v. University of Texas, 508 F.3d 812, 821 (5th Cir. 2007); American Civil Liberties Union v. Blanco, 523 F. Supp. 2d 476, 479 (E.D. La. 2007); Tyson v. Reed, Civ. Action No. 09-7619, 2010 WL 360362, at *4 (E.D. La. Jan. 21, 2010); Searls v. Louisiana, Civ. Action No. 08-4050, 2009 WL 653043, at *6 (E.D. La. Jan. 21, 2009); Demouchet, 2008 WL 2018294, at *3. Additionally, because a claim against a state employee in his official capacity for monetary damages is actually a claim against the state itself, such claims are barred by the Eleventh Amendment. Williams v. Thomas, 169 Fed. App'x 285, 286 (5th Cir. 2006); Tyson, 2010 WL 360362, at *4; Searls, 2009 WL 653043, at *6; Demouchet, 2008 WL 2018294, at *3.

Of course, the foregoing does not apply to the extent that plaintiff is asserting claims against McVea in his individual capacity or in any capacity for declaratory or injunctive relief.[2] However, those claims are likewise subject to immediate dismissal for the following reasons.

As noted, plaintiff claims that he has been denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. See U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). In support of his claims, he makes the following allegations. In 2010, he began complaining about pain in his right foot. In August of 2011, he underwent surgery to remove a "tumor" to resolve the pain. However, the pain recurred in November of 2011, and he again began to request medical

---

[2] A state employee sued in his official capacity is considered a "person" with respect to a § 1983 claim for relief which is declaratory or injunctive in nature and prospective in effect. Stotter, 508 F.3d at 821; American Civil Liberties Union, 523 F. Supp. 2d at 479. Further, the Eleventh Amendment does not bar such a claim. Aguilar v. Texas Department of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998).

treatment. He was allowed to consult with an outside orthopedic specialist by means of a Telemed conference in August of 2012, and he was he was subsequently taken to the Bogalusa Medical Center for an MRI. In March of 2013, another Telemed conference was held with the specialist to discuss the MRI findings and surgery was recommended. However, despite plaintiff's continual complaints of severe pain, no surgery was ever scheduled, and he was "denied proper medication or regular exams by Dr. McVea."

In order to conduct the screening required by federal law, the undersigned United States Magistrate Judge ordered production of a certified copy of plaintiff's medical records. Those voluminous records were filed into this federal record[3] and a copy was provided to plaintiff for his use in this proceeding. With respect to plaintiff's foot problem, those records, in pertinent part, include the following notations:

- On August 8, 2011, a "knot" was removed from plaintiff's foot. A specimen was sent for pathology analysis; that analysis revealed: "No lipoblasts, florets, or mitotic activity is seen within the mature andipose tissue in this specimen."

- On August 22, 2011, the medical notes indicate that the foot was "well healed" and the sutures were removed.

- On December 28, 2011, plaintiff was seen by the prison medical staff concerning his sick call request complaining of pain in his right foot. His chart was sent for Dr. McVea's review.

---

[3] Rec. Doc. 5.

- On February 22, 2012, plaintiff was seen by the prison medical staff concerning his sick call request noting multiple complaints, including a problem with his right foot. His chart was sent for Dr. McVea's review.

- On April 11, 2012, plaintiff was seen by Dr. McVea, who agreed to arrange for an orthopedic consultation concerning plaintiff's foot and ordered an x-ray of the foot.

- On May 24, 2012, an x-ray was taken. The findings were: "No acute fracture or dislocation. Soft tissues appear unremarkable."

- On July 8, 2012, plaintiff was seen by the prison medical staff concerning his sick call request complaining of two knots on his right foot which were causing him pain. The nurse's notes state: "During my exam of offender Jacobs he was standing, showing no sign of stress, and was able to walk without difficulty - no objective finding during my exam." Nevertheless, plaintiff's chart was sent for Dr. McVea's review.

- On July 30, 2012, plaintiff was seen by Dr. McVea, who again agreed to arrange for an orthopedic consultation concerning plaintiff's foot.

- On August 27, 2012, a Telemed conference was conducted with Dr. Christopher Marrero, an orthopedic specialist. The physical examination revealed: "Right foot: Two approximately 1cm masses over plantar aspect of base of 1st metatarsal with darkened discoloration overlying masses. Full ROM." It was recommended that an MRI be done on plaintiff's foot, and Dr. McVea accepted that recommendation.

- On October 4, 2012, plaintiff was sent to the hospital and the MRI was performed.

- On March 3, 2013, plaintiff was seen by the prison medical staff concerning his sick call request complaining of various ailments including foot pain. His chart was sent to Dr. McVea.

- On March 8, 2013, another Telemed conference was conducted with Dr. Christopher Marrero. The physical examination revealed no changes from the last consultation. Dr. Marrero recommended an appointment at the LSU Orthopedic Clinic for evaluation for possible surgery. Dr. McVea accepted that recommendation.

- On April 4, 2013, plaintiff was seen by the prison medical staff concerning his sick call request complaining of foot pain. The examination reveal no swelling or discoloration and range of motion appeared to be normal; however, his chart was sent to Dr. McVea.

- On April 8 and May 6, 2013, plaintiff was seen by the prison medical staff concerning his sick call requests complaining of various ailments including foot pain; however, he refused to be assessed by the medical staff.

- On May 7, 2013, plaintiff was seen by the prison medical staff concerning his sick call request complaining of various ailments including foot pain. His chart was sent to Dr. McVea.

- On June 5, 2013, plaintiff complained of foot pain and was examined by Dr. McVea, who prescribed acetaminophen.

- On June 26, 2013, plaintiff was seen by the prison medical staff concerning his sick call request complaining of foot pain, stating that the Tylenol he was prescribed was not helping. His chart was sent to Dr. McVea.

- On July 31, 2013, plaintiff complained of foot pain and was examined by Dr. McVea.

- On September 29 and October 8, 13, 16, 17, 22, 30, and 31, 2013, plaintiff was seen by the prison medical staff concerning his sick call requests complaining of various ailments including foot pain, stating that he wanted some medication other than the Tylenol prescribed. His chart was sent to Dr. McVea.

- On November 5, 2013, plaintiff was seen by the prison medical staff concerning his sick call request complaining of foot pain, stating that the Tylenol he was prescribed was not working; however, he refused to allow the medical staff to assess his foot. He told the medical staff to "let that Dr. know I will make sick call every day till I get what I need besides Tylenol." His chart was sent to Dr. McVea. Later that day, plaintiff submitted a self-declared emergency complaining of foot pain, and Dr. McVea determined that another visit was not required at that time.

- On November 6, 2013, plaintiff was examined by Dr. McVea concerning various ailments. At plaintiff's request, Dr. McVea discontinued the prescription for Tylenol and added one for Naprosyn.

- On November 18, 2013, plaintiff was seen by the prison medical staff concerning his sick call request complaining of foot pain, stating that the Naprosyn was not working. His chart was sent to Dr. McVea.

- On November 24, 2013, plaintiff was seen by the prison medical staff concerning his sick call request complaining of foot pain, stating that the pain medication he was prescribed was not working. Dr. McVea discontinued the Naprosyn and added a prescription for a "muscle rub."

- On December 2, 8, 11, 12, 16, 21, 22, 26, and 30, 2013, and January 5, 8, 9 and 14, 2014, plaintiff was seen by the prison medical staff concerning his sick call requests complaining of various ailments including foot pain, stating that he wanted some medication other than Tylenol and the "muscle rub." His chart was sent to Dr. McVea.

- On January 15, 2014, plaintiff was seen by the prison medical staff concerning his sick call request complaining of foot pain. He was examined by Dr. McVea, who noted: "I suspect that the patient is exaggerating his symptoms, but recommend an orthopedic evaluation for a second opinion."

- On January 16, 2014, plaintiff was seen by the prison medical staff concerning his sick call request complaining of foot pain. His chart was sent to Dr. McVea.

- On January 22 and February 6, 2014, plaintiff was seen by the prison medical staff concerning his sick call requests complaining of foot pain, stating that he wanted some medication other than Tylenol. His chart was sent to Dr. McVea.

- On February 19, 2014, a Telemed conference concerning plaintiff's foot was conducted with an outside specialist, Dr. Paul Peter DiMartino. Dr. DiMartino recommended that plaintiff be seen in person for further evaluation and that NSAIDs be given for pain control. Dr. McVea accepted those recommendations.

- On February 25, 2014, plaintiff was seen by the prison medical staff concerning a sick call request complaining of foot pain, stating that he wanted some medication other than Tylenol. His chart was sent to Dr. McVea.

- On March 1, 2014, plaintiff was seen by the prison medical staff concerning a sick call request complaining of pain and numbness in his foot. In pertinent part, the nursing notes state: "Offender already prescribed Tylenol for pain. No swelling, no bruising noted. Good ROM. Offender smiling during assessment, states 'going to continue to make SDE & sick call as long as I want till I get what I want.'" His chart was sent to Dr. McVea. That same day, Dr. McVea reviewed plaintiff's chart and entered the following order:

  > Due to frequent and inconsequential sick calls and self declared emergencies, this offender will only receive visual assessments unless the medical personnel responding deems it necessary to do a full evaluation.
  > This is to continue until I rescind this order.
  > Medical personnel can also respond at their convenience – all other medical issues take priority over suspected false SDEs.

- On March 6, 2014, plaintiff was seen by the prison medical staff concerning a sick call request complaining of foot pain. His chart was sent to Dr. McVea.

10

- On March 7, 2014, *the same date he signed his federal complaint in this case,* plaintiff refused to leave the prison for an offsite orthopedic appointment.

- On March 10, 11, 16, and 20, 2014, plaintiff was seen by the prison medical staff concerning sick call requests complaining of various ailments, including pain in his foot. His chart was sent to Dr. McVea.

Although plaintiff is claiming that his medical care has been inadequate, it is important to note that a prisoner's federal right to medical care is extremely limited and that medical malpractice or negligence are simply insufficient to state a constitutional claim. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, a prisoner's right to medical care under the Eighth Amendment is violated *only* if his "serious medical needs" have been met with "deliberate indifference" on the part of penal authorities. See, e.g., Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

Even if the Court assumes for the purposes of this opinion that plaintiff's foot problem constitutes a serious medical need,[4] his claims still fail because it is obvious that he cannot show the

---

[4] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

11

deliberate indifference required for an actionable federal claim. As the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). That is certainly the case here. Based on the voluminous medical records, it is beyond cavil that Dr. McVea did not refuse to treat plaintiff, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct evincing a wanton disregard for his medical condition. On the contrary, under Dr. McVea's supervision, plaintiff was evaluated repeatedly by the jail medical staff, allowed several consultations with outside specialists, given tests such as an x-ray and even an MRI, and provided with over-the-counter pain medication.

While it is evident that plaintiff was unhappy with the over-the-counter pain medication, a prisoner has no right to be prescribed a particular medication for pain, and the fact that he disagrees

12

with the prison medical staff concerning which pain medication is appropriate is not actionable under § 1983. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994) (a refusal to provide an inmate with the specific pain killers he requests does not rise to the level of a constitutional violation). This is true even if the medication chosen by the prison doctor[5] is not as effective as an alternative the prisoner would prefer, because the fact that a prisoner's medical care "may not have been the best money could buy" is insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). Moreover, where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted despite the treatment. Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

Plaintiff's belief that more could be done for him also is of no moment. Absent exceptional circumstances, a prisoner's disagreement with his medical treatment simply does not constitute deliberate indifference. Gobert, 463 F.3d at 346. For example, "the question of whether ...

---

[5] However, the Court notes that Dr. McVea was not alone in finding that over-the-counter medications were appropriate. As noted, at the Telemed conference on February 19, 2014, Dr. Paul Peter DiMartino also recommended NSAIDs (which commonly include such medications as aspirin, ibuprofen, and naproxen) for pain control.

13

additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107.  Generally, such matters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges.  Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions.  Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action.").  There is no basis whatsoever to engage in such second-guessing here.

In summary, the determinative issue before the Court is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problem persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with *deliberate indifference*.  As noted, it is clear that there was no deliberate indifference in this case.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's federal civil rights claims be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.[6]

---

[6] There is no indication in the complaint that plaintiff is asserting any claims under state law in this federal proceeding.  However, if he reveals such an intention in any objections filed to this Report and Recommendation, the Court should decline to consider any such claims.  See 28 U.S.C.

14

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[7]

New Orleans, Louisiana, this second day of June, 2014.

                                                           **DANIEL E. KNOWLES, III**
                                                           **UNITED STATES MAGISTRATE JUDGE**

---

§ 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims."). If plaintiff wishes to pursue claims under state law, he should do so in the state courts.

[7] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.